IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 23-mj-320 (MAU) |
| | : | 24-cr-260 (APM) |
| v. | : | |
| | : | 18 U.S.C. § 231(a)(3) |
| BRANDON HEFFNER, | : | |
| Defendant. | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Brandon Heffner, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote

count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Michael Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after

2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

8. The attack at the U.S. Capitol adversely affected federally protected functions, including the United States Secret Service's protection of Vice President Pence, and the United States Capitol Police's protection of the Capitol and its occupants.

### *The Defendant's Pre-January 6, 2021, Conduct*

9. On December 12, 2020, the defendant, a member of the Proud Boys' Maryland-DC chapter, confronted officers of the United States Park Police. Following a physical altercation with officers, the defendant was arrested and charged with unlawful possession of ammunition, under D.C. Code § 7-2506.01. The possible penalty for the offense as provided in

D.C. Code § 7-2507.06 is one year. During that incident, the defendant wore a black helmet and black tactical vest. The vest read: "PROUD BOYS MARYLAND." *See Figure 1.*



*Figure 1*

10. The defendant was processed and released on December 14, 2020, on conditions that he report weekly to D.C. Pretrial Services and that he not possess ammunition. Additionally, the defendant was instructed to not commit any criminal offenses while his D.C. case was pending. He would later be sentenced on May 28, 2021 to serve 30 days unsupervised probation, following 10 days incarceration, suspended with credit for time served.

### The Defendant's Participation in the January 6, 2021, Capitol Riot

11. On January 6, 2021, the defendant approached the Capitol wearing a black tactical vest, and black helmet. *See Figure 2.*



*Figure 2*

12. Members of the Proud Boys were instructed not to "wear colors" on January 6, 2021 that would signify that they were members of the Proud Boys (the combination of black and yellow). The defendant's vest on January 6, 2021, did not read "PROUD BOYS MARYLAND," however, there was a Velcro rectangle where it was previously affixed.

13. On the West Plaza, an uncompleted inaugural stage had been constructed on the Lower West Terrace of the Capitol, with two temporary stairwells allowing law enforcement access to both levels of the terrace. At approximately 12:54 p.m., rioters breached the outer barricades on Capitol Grounds and advanced to the West Plaza. USCP officers, reinforced by Metropolitan Police Department officers, formed a police line along the steps of the Lower West Terrace to protecting the building and the people inside.

14. At approximately 2:28 p.m., rioters overran the police line along the West Plaza and gained access to the base of the uncompleted inaugural stage. Law enforcement was forced to retreat using the temporary stairwells built within the inaugural stage.

15.  At approximately 2:33 p.m., the defendant—alongside fellow rioters—used his body to prevent the use of one of the temporary stairwells. *See Figure 3*. The defendant braced against the door using his left hand to keep it closed.



Figure 3

16.  At the time, an officer with the Metropolitan Police Department, Officer C.L., was coming down the temporary stairs with a tear gas cannister. The officer shouted to the rioters to "backup! Backup!" Heffner and others held the door closed.

17.  Outside the door, a rioter next to the defendant informed someone recording, "they're trying to come out and tear gas. Spread the word." The group continued to hold the door closed.

### Elements of the Offense

18.  The parties agree that Obstruction of Law Enforcement during a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), requires the following elements:

a. First, the defendant knowingly committed an act with the intended purpose of obstructing, impeding, or interfering with on or more law enforcement officers.

b. Second, at the time of the defendant's act, the law enforcement officer was engaged in the lawful performance of his or her official duties incident to and during a civil disorder.

c. Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce, or the conduct or performance of any federally protected function.

### Defendant's Acknowledgments

19. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he knowingly held the door closed with the intended purpose of obstructing, impeding, or interfering with Officer C.I., who was engaged in the lawful performance of her official duties incident to and during the January 6, 2021 riot at the United States Capitol, which was a civil disorder. He also admits that the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce, including commerce at Safeway stores in the District of Columbia, or the conduct or performance of a federally protected function, including the Secret Service's protection of the Vice President.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

/s/ Cytheria D. Jernigan
CYTHERIA D. JERNIGAN
Assistant United States Attorney
D.C. Bar No. 494742
601 D St. N.W.
Washington, D.C. 20530
(318) 676-3611

## DEFENDANT'S ACKNOWLEDGMENT

I, Brandon Heffner, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 12-06-2024

Brandon Heffner
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 12/9/24

Andrés Jalon
Attorney for Defendant